# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Dirahn Gilliams, | : | |
| | : | |
| Plaintiff | : | |
| v. | : | Civil Action No. 2:10-cv-01914-ER |
| | : | |
| Dwayne Michael Carter, Jr. pka Lil' Wayne, | : | |
| Darius Harrison pka Deezle, James | : | Jury Trial Demanded |
| Scheffer pka Jim Jonsin, Rex Zamor, | : | |
| Cash Money Records, Inc., UMG | : | |
| Recordings, Inc., and Young Money | : | |
| Publishing, Inc., | : | |
| | : | |
| Defendants. | : | |

**AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Plaintiff, Dirahn Gilliams, by and through his undersigned attorney, brings a series of claims against Defendants Dwayne Michael Carter, Jr., pka Lil' Wayne, Darius Harrison pka Deezle, James Scheffer pka Jim Jonsin, Rex Zamor, Cash Money Records, Inc., UMG Recordings, Inc., and Young Money Publishing, Inc., of which the following is a statement:

**PARTIES, JURISDICTION AND VENUE**

1.      This action is brought, and subject matter jurisdiction lies within this Court, pursuant to 28 U.S.C. §§s 1331 and 1338. This Court has federal jurisdiction in this matter in that the Plaintiff seeks damages and injunctive relief against the Defendants named herein under §§ 501 through 505 of the Copyright Act of 1976, 17 U.S.C. § 101 et seq.

2.      Venue lies within this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)(3), 1391(c), 1391(d) and 1400(a) in that a substantial part of the events or the omissions giving rise to Plaintiff's claims occurred in this judicial district.

[1]

3.     At all times relevant to this action, Plaintiff, Dirahn Gilliams, was an individual with a principal place of business within this judicial district.

4.     Defendant Dwayne Michael Carter, Jr. pka Lil' Wayne, is an individual who, on information and belief, currently is a resident of the State of New York.

5.     Defendant Darius Harrison pka Deezle is an individual who, on information and belief, is a resident of the State of Louisiana.

6.     Defendant James Scheffer pka Jim Jonsin is an individual who, on information and belief, is a resident of the State of Florida.

7.     Defendant Rex Zamor is an individual who, on information and belief, is a resident of the State of New York.

8.     Defendant Cash Money Records, Inc., is a Louisiana corporation with its registered office located at 201 St. Charles Avenue, 49th Floor, New Orleans LA 70170.

9.     Defendant UMG Recordings, Inc., is a Delaware corporation and has a principal place of business at 1755 Broadway, New York, NY 10019.

10.     Defendant Young Money Publishing, Inc., is a corporation organized and existing under the laws of the state of Louisiana with a registered office located at 100 James Drive, # 130, St. Rose, LA 70087.

11.     At all times relevant to this action, all Defendants conduct business in the Commonwealth of Pennsylvania, have substantial contact with the Commonwealth of

Pennsylvania, direct business to the Commonwealth of Pennsylvania, and otherwise have sufficient contacts with the Commonwealth of Pennsylvania to confer jurisdiction in the Commonwealth of Pennsylvania.

12.     All conditions precedent to the institution of this action have been satisfied or have been otherwise waived.

**BACKGROUND FACTS**

13.     At all relevant times, Gilliams is a musician, writer and composer with a principal place of business in the Commonwealth of Pennsylvania.

14.     At all times relevant to this action, Young Money was an imprint of Cash Money, and Universal provided distribution, marketing and promotion support for Cash Money, Young Money and their artists.

15.     Since 2005, as a musician, writer and composer, Gilliams has regularly created and recorded musical compositions and instrumentals within the rap and hip hop communities, for distribution and sale within the Commonwealth of Pennsylvania and throughout the United States.

16.     Defendants Harrison and Scheffer are successful music producers who have produced numerous hit songs and achieved worldwide stardom in their production efforts throughout the United States.

17.     Defendants Cash Money, Universal and Young Money are in the business of distributing and exploiting musical sound recordings including, but not limited to, sound

recordings created by the artist defendant Dwayne Michael Carter, Jr., commonly known as "Lil Wayne."

18.  Unlike other genre in the music industry, rappers and music producers in the rap and hip hop segments of the music industry routinely collaborate with one another, appear as featured rappers on each other's songs and albums, share music producers and exchange musical works.  This phenomenon particularly occurs among rappers and music producers signed to, employed by or affiliated with the same or related record labels.

19.  In October 2006, Gilliams began working with Respect Management as a music producer and was assigned by Kevon Glickman to work with the Respect Management clients/artists Tramar Dillard pka "Flo Rida," British Alexander Mitchell pka "Brisco," and the group "Triple C," which was comprised of Rick Ross, Richard Morales pka "Gunplay," and Kevin Belnavis pka "Torch."  In that capacity, Gilliams worked closely with Glickman, Michael "Jerzey" Anthony, a production advisor, and Lamont Caldwell, a career concept advisor.  At that time, Mitchell had already appeared on the Rick Ross album, "Port of Miami," on the single, "I'm a G," with Carter.  In November 2006, Carter signed Mitchell to Cash Money Records.

20.  Mitchell and Carter have had a close affiliation since 2006.  Mitchell's first notable song, "New Cash Money," was with Cash Money Records on Carter's mixtape "Da Drought 3."  Through 2007 and 2008, Mitchell and Carter continued to work together.  For example, Mitchell did a guest appearance on the song "La La" on the album "Tha Carter III" by Carter, described in greater detail herein, and released two of his own singles featuring

[4]

Carter, "In the Hood" (in 2007) and "Just Know Dat," (in 2008) which also featured "Flo Rida."

21.     Glickman initially asked Gilliams to concentrate his efforts on writing and producing songs for Triple C.  However, because in Glickman's opinion Triple C did not demonstrate the serious commitment required to be successful in the music industry, Glickman told Gilliams to concentrate his efforts on writing and producing songs for "Flo Rida" and Mitchell.  Gilliams worked on creating a song for "Flo Rida" that eventually became the hit single, "Low."

22.     In April 2007, Gilliams created, composed, authored and wrote an original composition entitled "Grindin' Lika Goon," which consisted of wholly original matter.  This song was intended to be for Mitchell, who grew up in Opa-locka, Florida, and often refers to himself as the "Opa-locka Goon."  Gilliams registered "Grindin' Lika Goon" with the United States Copyright Office, Registration No. SR 643-366, effective date of registration: April 28, 2010.

23.     In June 2007, Gilliams created, composed, authored and wrote an original composition entitled "Stuntin' Aint a Habit," which consisted of wholly original matter.  This song also was intended to be for Mitchell.  Gilliams emailed the song to Glickman on June 26, 2007.  Glickman received the email and attached song and emailed the song to Bernard Resnick, who in turn emailed the song to Bernard Freeman, who in turn provided the song to David Banner, a rap artist and music producer.   "Stuntin' Aint a Habit" eventually was recorded by Banner as "Get Like Me," released in March 2008 and became a hit record,

[5]

rising to #16 on the Billboard Hot 100, #7 on the R&B chart and #2 on the Rap chart. With Banner's approval, Gilliams was acknowledged as a writer of the song and received royalties from ASCAP in that capacity.

24. Carter included a song entitled "Stuntin" on his mixtape, "Dedication 3," released in November 2008, that was produced by Banner and used the instrumental from "Get Like Me." Banner, Carter and Harrison have a close association as evidenced by the fact, for example, that Harrison co-produced a single written by Banner and Carter and produced by Banner, "9mm," that was released on July 10, 2007.

25. The manner through which Banner received "Stuntin' Aint a Habit" is essentially the same manner through which Scheffer, Carter and Harrison obtained "Grindin Lika Goon," as described in the succeeding paragraphs, all of which is evidence of and establishes a pattern and/or practice of transmission and exchange of musical works among the persons identified herein, which is common in the rap and hip hop segments of the music industry.

26. On April 19, 2007, Gilliams emailed to Glickman and Anthony the instrumental version of "Grindin Lika Goon." Both Glickman and Anthony received the email and attached song.

27. On April 24, 2007, Gilliams emailed to Glickman, Anthony, Caldwell and Tony Tukpah pka "Don Prince," "Grindin' Lika Goon," with instruments and lyrics. Glickman, Anthony and Tukpah received the email and the attached song. However, the email sent to Caldwell was returned to Gilliams as undeliverable.

[6]

28.     The version of "Grindin Lika Goon" received by Glickman, Anthony and Tukpah, and all versions distributed by Gilliams thereafter, contained the following lyrics:

> Grindin' lika goon (goon)
> Gri gri gri grindin' lika goon
> Grindin' lika grindin' lika
> Grindin' lika goon (goon)

29.     In May 2007, Gilliams posted an alternative version of "Grindin' Lika Goon" on his SoundClick.com page.   Established in 1997, SoundClick is the leading free music community featuring signed and unsigned artists, plus state of the art social media tools.  It offers artists a platform for self-promotion.  Songs uploaded to SoundClick by artists are available as free mp3 downloads.  SoundClick has over 3 million members and more than 70 million monthly pageviews.

30.     On SoundClick.com, Gilliams is known as "Knocomp," a moniker by which he was also known at that time by Mitchell, Caldwell, Glickman, Anthony, Ronald Williams and Bryan Williams, the co-founders of Cash Money Records, and Nyanda Thorbourne and Nailah Thorbourne, pka the group "Brick & Lace," any of whom could have accessed Gilliams' Soundclick.com page and listened to and downloaded "Grindin' Lika Goon."

31.     Gilliams' SoundClick.com page can easily be accessed by navigating to SoundClick.com and searching the name "Knocomp" or by Googling the name "Knocomp" and navigating to the SoundClick.com result.

32.    Bryan Williams pka "Baby" or "Birdman" has recorded a collaboration album and numerous tracks with Carter, and they have a close association.

33.    The Thorbourne sisters are artists signed to Kon Live, a record label founded and owned by Alianne Badara Akon Thiam pka "Akon," who is a close associate of Carter.

34.    On information and belief, sometime after April 24, 2007, Glickman sent a copy of "Grindin' Lika Goon" to Bernard Resnick, who received the song.  Glickman and Resnick are personal friends and business acquaintances, both are attorneys with offices and practices in Philadelphia, and both are actively involved in the music industry, and in particular, the hip hop and rap segments of the music industry.  They regularly share information about rap and hip hop artists, including their musical compositions, conduct workshops together about the music industry, and have a close affiliation that is well-known in the hip hop and rap segments of the music industry.

35.    At the time that Glickman gave a copy of "Grindin' Lika Goon" to Resnick, Resnick represented Bernard Freeman pka "Bun B," a rap artist and producer from Houston, Texas.  Freeman and Resnick regularly exchanged musical works given to them and created by others in the rap and hip hop communities.  The close personal and business affiliation between Freeman and Resnick is evidenced by the fact that Freeman is prominently featured on Resnick's website.  See http://www.bernerdresnick.com/writings.html.  On information and belief, Resnick sent a copy of "Grindin' Lika Goon" to Freeman, who received it.

[8]

36. At the time that Resnick sent a copy of "Grindin' Lika Goon" to Freeman, Freeman was working with Mitchell and Mitchell's Cash Money Records associates as a music producer. Through Freeman, Mitchell and his Cash Money Records associates obtained "Grindin' Lika Goon." At this same time, Freeman was working as a music producer with Banner and Rick Ross. The long-standing close personal and business affiliation between Freeman and Banner is evidenced by the fact that, for example, they posted on You Tube a video of themselves in a joint recording session. See http://www.youtube.com/watch?v=_xtccaFYNc8. Through Freeman, Banner obtained "Grindin Lika Goon." At this same time, Banner was working as a music producer with Scheffer, Carter, Harrison and Mitchell on "Tha Carter III." In fact, Banner is credited on at least one song on "Tha Carter III," "La La."

37. At the time and prior, Freeman, Carter and Banner had a close association. In fact, in May 2008 Freeman released an album entitled "II Trill" that contained songs on which Carter ("Damn I'm Cold"), and Banner and Ross ("You're Everything") appeared.

38. On information and belief, in 2007, Scheffer, Carter and Harrison obtained "Grindin Lika Goon" from Banner and/or Mitchell and his Cash Money Records associates.

39. On December 17, 2007, Gilliams emailed to Alexander Dent, a music producer who previously had worked on two projects with Gilliams, the song "Grindin' Lika Goon" in FLP format. This format is a digital blueprint of a work and can be easily manipulated.

40. Dent then emailed the song to Greg Whealton pka "Kafoeno," a music producer, also in FLP format. At the time, Kafoeno was a prolific creator and seller of beats

[9]

on RocBattle.com. Kafoeno also was a close associate of Carter. For example, in early 2007, Carter recorded vocals with Kafoeno over a Kafoeno beat. Both prior to and after that collaboration, Kafoeno regularly shopped beats to Carter.

41.     Gilliams emailed the song to Dent, who in turn emailed it to Kafoeno, to master the recording.

42.     In November 2007, Kafoeno had told Gilliams that he had heard "Grindin' Lika Goon" on Gilliams' Soundclick page and complimented Gilliams on the song.

43.     On information and belief, as was his custom with songs and beats that appealed to him, Kafoeno emailed "Grindin' Lika Goon" in FLP format to Carter and/or Carter's A&R, who received the song.

44.     Scheffer is known to prefer and be adept at working with music in FLP format.

45.     On information and belief, through their close associations with Freeman, Banner, Mitchell and/or Kafoeno, and prior to the commercial release of the album, "Tha Carter III," Scheffer, Carter and/or Harrison obtained "Grindin' Lika Goon."

46.     The facts described above demonstrate that there is a long-standing and close relationship linking Freeman, Banner, Mitchell and Kafoeno to Carter, Scheffer and/or Harrison, through collaborating on musical compositions, recording musical compositions, producing musical compositions, working with common artists in the rap and hip hop segments of the music industry, and sharing musical compositions and "beats" amongst

themselves and other artists. In addition, because of their status in the rap and hip hop segments of the music industry, Freeman, Banner and Scheffer regularly receive unsolicited submissions of musical compositions from other rap artists, writers and producers.

47.     On information and belief, in late 2007 and early 2008, the artist commonly known as "Lil Wayne" was working on his studio album entitled "Tha Carter III".

48.     On information and belief, Scheffer and Harrison began working with Carter as producers on "Tha Carter III" in 2007.

49.     In or about June 2008, the album entitled "Tha Carter III" was commercially released through various media, including streaming media, compact disc and digital downloads.

50.     The album "Tha Carter III" included the song "Lollipop", which allegedly was produced by Jonsin and Deezle. On information and belief, Defendants Carter, Scheffer, Harrison and Zamor each contributed to the creation of the musical composition "Lollipop".

51.     The signature lyrics of "Lollipop" are as follows:

> Shawty wanna li, li, li, lick me
>
> Like a lollipop
>
> Shawty wanna li, li, li, lick me
>
> Like a lollipop
>
> Shawty wanna lick me
>
> Like a lollipop
>
> She lick me

Like a lollipop

(I let her lick the rapper)

52.      "Lollipop" became a smash hit, topping various airplay and sales charts and driving sales of the album "Tha Carter III" by "Lil Wayne".  For example, "Lollipop" was certified 4x Platinum by the RIAA and was ranked the #7 hip hop song of 2008 by MTV.  The song reached #1 on the 2008 issue of Notarized by BET, it was #5 on Rolling Stone's list of the 100 Best Songs of 2008 and was the single most downloaded ringtone of the 2000s.

53.      On information and belief, each Defendant was aware of, participated in, and contributed to the exploitation of the musical composition "Lollipop" including the marketing, distribution, and exploitation of "Lollipop" in the United States, including Pennsylvania, through sales of the compact discs, digital downloads, radio and television airplay, and otherwise.

54.      On information and belief, all Defendants have earned millions of dollars and revenues through their exploitation of "Lollipop" and continued to actively exploit the work worldwide through sales of compact discs, radio and television airplay, and otherwise.

55.      On information and belief, as alleged above, after April 24, 2007, Scheffer, Harrison, Carter, Zamor, Cash Money and/or Young Money received a copy of Gilliams' musical composition "Grindin' Lika Goon" through their agents and associates identified above, all of whom received in 2007 a copy of Gilliams' musical composition "Grindin' Lika Goon.".

[12]

56.     The facts alleged above establish a chain of access to Gilliams' musical composition "Grindin' Lika Goon" Carter, Scheffer, Harrison and Zamor.

57.     The facts alleged above establish both direct evidence of access and a reasonable probability of access to Gilliams' work by Carter, Scheffer and Harrison, and thus establish that Defendants engaged in illegal copying of "Grindin' Lika Goon," circumstantial evidence of which is proof of access.

58.     The facts alleged above establish that it is natural that the musical works possessed by Freeman, Banner, Kafoeno and Mitchell would be shared with and provided to Carter, Scheffer and/or Harrison.

59.     On information and belief, all Defendants should have known that "Grindin' Lika Goon" was an original composition produced by Gilliams.

60.     On information and belief, Scheffer, Harrison, Carter, Zamor, Cash Money and/or Young Money copied and incorporated substantial and original portions of Gilliams' composition, "Grindin' Lika Goon" while producing "Lil Wayne's" musical composition and sound recording "Lollipop".   On information and belief, Scheffer, Harrison, Carter and/or Zamor then conveyed "Lollipop" (which contained Gilliams' composition) to Cash Money, Young Money and/or Universal for distribution.

61.     "Grindin' Lika Goon" and "Lollipop" are similar in the melody, rhythm, harmony and structure.

[13]

62.     Although "Lollipop" contains many more lyrics than "Grindin' Lika Goon," the most important lyrics of "Lollipop," that portion intended to stick in the mind of the listener and to become the signature lyrics of the song, are similar to the lyrics of "Grindin' Lika Goon."

63.     "Grindin' Lika Goon" is novel and concrete and Defendants misappropriated and copied the basic and fundamental structure and pattern/sequence of "Grindin' Lika Goon" in "Lollipop."

64.     The harmonic progression in "Grindin' Lika Goon" is a highly unique pattern.

65.     The elements of "Grindin' Lika Goon" that were copied by Defendants are central to both works, in particular, the structure of the signature lyrics of "Lollipop" and the structure of the harmonic progression, both of which were not in the public domain at the time "Grindin' Lika Goon" was created and were not part of the individual Defendants' prior works.

66.     There is substantial similarity between the two (2) works due to Defendants' copying in at least the following respects, all of which elements are protectable:

    a.     they have the same melody;

    b.     they have the same tempo;

    c.     they utilize the same instruments;

    d.     they are written in minor tonalities;

    e.     they use the same harmonic progression;

    f.     they employ short percussive vocal sounds at the end of their "grooves;" and

[14]

g.     the signature lyrics are similar.

67.     The degree of similarity between the works establishes that illegal copying of "Grindin' Lika Goon" by Defendants occurred and that Lollipop is not the product of independent creation, coincidence or a prior common source.

68.     No prior works of any of the individual Defendants have exhibited any of the elements of "Grindin' Lika Goon" combined in the same unique manner as exists in "Grindin' Lika Goon."

69.     The facts alleged above establish that Defendants had access to "Grindin' Lika Goon" and that the degree of similarity between "Grindin' Lika Goon" and "Lollipop" is so substantial that it could only have been caused by copying and not through coincidence, independent creation or a prior common source.

70.     In the alternative, even if the facts alleged above do not establish that Defendants had access to "Grindin' Lika Goon," the facts alleged above establish that Defendants copied "Grindin' Lika Goon" because the similarities between it and "Lollipop" are so striking as to preclude the possibility that Defendants independently arrived at the same result.

71.     In the alternative, to the extent that the elements of similarity between Grindin' Lika Goon and Lollipop are unprotectable, Gilliams combined them in a sufficiently original manner to warrant copyright protection.

72.     Defendants also infringed Gilliams' copyright in Grindin' Lika Goon by distributing it as "Lollipop" to the group, Framing Henley, to record a cover version of

[15]

"Lollipop." The Framing Henley cover of "Lollipop" has a bridge that is the same as "Grindin' Lika Goon," in that the harmonic progressions and the claps in both songs are the same. This fact establishes that Defendants' efforts to avoid infringement by making a minor change in the harmonic progression exhibited in "Lollipop" proves the infringement. All of the individual Defendants claim to be writers of the Framing Henley version of "Lollipop," and on information and belief, have received compensation in that capacity

73.     Gilliams did not become aware that Defendants had copied, reproduced and used his musical composition "Grindin' Lika Goon" in the musical composition and sound recording of "Lollipop" until sometime after June 2008, when "Tha Carter III" was released commercially.

74.     Defendants never sought or obtained Gilliams' permission to copy, duplicate, perform or otherwise use his musical composition of "Grindin' Lika Goon" in "Lil Wayne's" composition and sound recording "Lollipop", in the Framing Henley cover, or at all.

75.     Defendants Cash Money, Young Money and/or Universal never sought or obtained Gilliams' permission to copy, duplicate, perform, or distribute or otherwise use his musical composition "Grindin' Lika Goon" when they distributed "Lil Wayne's" composition and sound recording "Lollipop" which was included in the album "Tha Carter III".

76.     Defendants' copying, duplication, use, performance and exploitation of "Grindin' Lika Goon" in the composition and sound recording of "Lollipop" and in the Framing Henley constituted infringements of Gilliams' copyright in the composition of "Grindin' Lika Goon".

[16]

77.     Defendants' infringing acts were willful, deliberate and committed with prior notice and knowledge of Gilliams' copyright and/or his ownership.  At a minimum, Defendants acted in reckless disregard of Gilliams' copyright and/or ownership.

78.     In engaging in the acts complained of herein, Defendants, among other things, also failed to properly credit the author and publisher of "Lollipop", and falsely implied that legal authorization was obtained from Gilliams to distribute "Grindin' Lika Goon" in the use of the composition of "Lollipop" by "Lil Wayne" or in the Framing Henley cover.

79.     On information and belief, each of the Defendants earned and received millions of dollars and other valuable benefits and consideration from their copying and use of "Grindin' Lika Goon" in the musical composition and sound recording of "Lollipop" and in any other uses that may have been made thereof by the Defendants, including the Framing Henley cover.

80.     As a direct and proximate result of the Defendants' acts, Plaintiff has incurred damages including attorney's fees and costs in having to bring this lawsuit.

### Count I – Copyright Infringement

81.     Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-80, inclusive, of this Complaint.

82.     Plaintiff is the owner and the copyright of the musical composition of "Grindin' Lika Goon" and is entitled and authorized to protect his composition against

[17]

copyright infringement, including the enforcement of copyright actions. Plaintiff has secured the exclusive rights under federal law to protect his copyright.

83.     On information and belief, since at least June 2008, Defendants infringed, and are continuing to infringe, upon Plaintiff's copyright in the composition "Grindin' Lika Goon" including, but not limited to by copying, reproducing, preparing, causing, contributing to, and participating in the unauthorized copying, reproduction, and use of the musical composition "Grindin' Lika Goon" in the sound recording "Lollipop" and in the Framing Henley cover and causing the same to be publicly distributed in retail stores, on the internet, by digital download, through radio, through television airplay, through compilation recordings, and otherwise, including in this judicial district.

84.     Plaintiff did not authorize Defendants to copy, reproduce, perform or use the composition "Grindin' Lika Goon" in recording "Lollipop," in the Framing Henley cover, or at all. Defendants did not seek or obtain any permission, consent or license from Plaintiff for the copying, reproduction, performance or use of the composition "Grindin' Lika Goon" in the composition or sound recording "Lollipop", in the Framing Henley cover, or in any uses thereof that were made or authorized by Defendants, or at all.

85.     Defendants' infringing acts alleged herein were willful, deliberate and committed with prior notice and knowledge of Plaintiff's copyright. At a minimum, Defendants acted in reckless disregard of Plaintiff's copyright and/or ownership of the sound recording "Grindin' Lika Goon".

[18]

86.     As a direct and proximate result of their actions, Defendants are liable to Plaintiff for willful copyright infringement under 17 U.S.C. § 501.  Plaintiff suffered, and will continue to suffer, substantial damage to his professional reputation and goodwill, as well as losses in an amount not yet ascertained, but which will be determined according to proof. In addition to Plaintiff's actual damages, Plaintiff is entitled to receive the profits made by Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504.  In the alternative, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2), because of Defendants' willful copyright infringement.

87.     Plaintiff does not have an adequate remedy at law for Defendants' wrongful conduct in that (a) Plaintiff's copyright is unique and valuable property which has no readily determinable market value; (b) the infringement by the Defendants constitutes an interference with Plaintiff's goodwill and professional reputation; and (c) Defendants' wrongful conduct, and the damages resulting to Plaintiff therefrom is continuing. Defendants' use of copyright infringement has caused Plaintiff irreparable injury, and Defendants threatened to continue to commit these acts.  Plaintiff is entitled to injunctive relief pursuant to 17 U.S.C. § 502 enjoining any use or exploitation by Defendants of their infringing composition and all sound recording of "Grindin' Lika Goon" and to an order under 17 U.S.C. § 503 that any of the Defendants' infringing products be impounded and destroyed.

WHEREFORE, Plaintiff, Dirahn Gilliams, hereby demands judgment in his favor and against Defendants, granting him all relief available under the Copyright Act.

[19]

*Jury Demand*

88.     Plaintiff demands a trial by jury of all issues so triable.

_____
Robert T Vance Jr (RTV3988)
Law Offices of Robert T Vance Jr
Suite 1530 Land Title Building
100 South Broad Street
Philadelphia PA 19110
215.557.9550 t
215.557.9552 f
rvance@vancelf.com

*Attorney for Dirahn Gilliams*

Dated:  September 28, 2010

Certificate of Service

I hereby certify that a copy of the foregoing Amended Complaint was served on the following counsel of record and unrepresented parties as follows by first class mail, postage prepaid on September 28, 2010:

Sean P. Mahoney
Gibbons P.C.
1700 Two Logan Square
18th & Arch Streets
Philadelphia PA 19103

Cynthia S. Arato
Macht, Shapiro, Arato & Isserles LLP
1114 Avenue of the Americas, 45th floor
New York NY 10036

Richard L. Caplan
Timoney Knox LLP
132 E. Chestnut Street
Lancaster PA 17602

Brian D. Caplan
Caplan & Ross
270 Madison Avenue, 13th Floor
New York NY 10016

Robert T Vance Jr

[21]